IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:15-CV-136-D

| | |
|---|---|
| BUDDY KINLEY, )<br>)<br>    Plaintiff, )<br>)<br>    v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>    Defendant. ) | **MEMORANDUM<br>AND RECOMMENDATION** |

In this action, plaintiff Buddy Kinley ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 23, 26). Both filed memoranda in support of their respective motions. (D.E. 24, 27). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 28). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded for further proceedings.

### **BACKGROUND**

#### I.     **CASE HISTORY**

Plaintiff filed an application for DIB on 25 August 2011, alleging a disability onset date of 11 January 2011. Transcript of Proceedings ("Tr.") 21. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 21. On 8 January

2013, an initial hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 39-72. The ALJ that conducted this initial hearing died before issuing a decision, and, as a result, plaintiff requested a supplemental hearing by the newly assigned ALJ. Tr. 21, 334. A supplemental video hearing was held on 24 September 2013 at which plaintiff alone testified. Tr. 73-94. The ALJ issued a decision denying plaintiff's claim on 19 December 2013. Tr. 21-38.

Plaintiff timely requested review by the Appeals Council. Tr. 15-17. The Appeals Council admitted additional evidence submitted by plaintiff consisting of medical records from the Department of Veterans Affairs ("VA") and other records (Tr. 804-1165), but denied the request for review on 1 May 2015. Tr. 1-6. The Appeals Council provided no meaningful assessment of the additional evidence or other analysis of the basis for its decision, stating simply:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of record.
>
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. 2.

At the time of the Appeals Council's denial, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 20 June 2015, pursuant to 42 U.S.C. § 405(g). (*See* Compl. (D.E. 1)).

## II.   STANDARDS FOR DISABILITY

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement. 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform [his] past work given the limitations caused by [his] medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical impairments do not meet the severity and duration requirements of the regulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment or continues the analysis. The ALJ cannot deny benefits at this step.
>
> If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect [his]

ability to work. [20 C.F.R.] § 416.945(a)(1).[1] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[2]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[3] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### III. ALJ'S FINDINGS

Plaintiff was 37 years old on the alleged onset date of disability and 39 years old on the date of the initial hearing and the supplemental hearing. *See, e.g.*, Tr. 32 ¶ 7. The ALJ found that plaintiff has at least a high school education (Tr. 32 ¶ 8) and past relevant work as a heavy equipment operator and steel worker (Tr. 31 ¶ 6).

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 23 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease status-post cervical and lumbar surgeries. Tr. 23 ¶ 3. Plaintiff underwent his lumbar

---

[1] *See also* 20 C.F.R. § 404.1545(a)(1).

[2] *See also* 20 C.F.R. § 404.1545(a)(2).

[3] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

surgery, a posterior lumbar interbody fusion at L5-S1, in July 2011. Tr. 26 ¶ 5. He underwent his cervical surgery, an anterior cervical discectomy and fusion at C5-6, in November 2011. Tr. 26 ¶ 5. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 24 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform the full range of sedentary work, noting specifically that "claimant can lift and carry up to 10 pounds occasionally and lesser amounts frequently" and "can sit for 6 hours in an 8-hour day, and stand and walk occasionally." Tr. 24 ¶ 5.[4]

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 31 ¶ 6. At step five, the ALJ concluded that based on plaintiff's RFC for the full range of sedentary work, age, education, and work experience, a finding of "not disabled" was directed by Medical-Vocational Guidelines Rule 201.28.[5] Tr. 32 ¶ 10. The ALJ therefore concluded that plaintiff was not disabled from the alleged onset date, 11 January 2011, through the date of his decision, 19 December 2013. Tr. 32 ¶ 11.

---

[4] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Sedentary Work," 1991 WL 688702. "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

[5] The Medical–Vocational Guidelines or grids, which are set out in 20 C.F.R. pt. 404, subpt. P, app. 2, are a set of rules that, when applied directly, as here, specify a conclusion as to whether or not a claimant is disabled. *See generally* Medical-Vocational Guidelines Rule 200.00(a). They may also be used as a framework for decision making. *See id.* (d). The Medical-Vocational Guidelines are grouped by RFC for sedentary, light, medium, and heavy or very heavy work, respectively. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (*e.g.*, none, unskilled, semiskilled, skilled, transferability of skills). The rule relied upon by the ALJ appears in Table No. 1 of the Medical-Vocational Guidelines, which "take[s] administrative notice that there are approximately 200 separate unskilled sedentary occupations . . . in the national economy." Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *3 (2 July 1996).

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1

6
Case 7:15-cv-00136-D   Document 33   Filed 07/26/16   Page 6 of 19

(W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and DIB awarded or, alternatively, that this case be remanded for a new hearing on the grounds that the ALJ: (1) improperly evaluated the evidence of his pain in determining his RFC; and (2) failed to give appropriate consideration and weight to a VA disability determination finding plaintiff to have a combined disability rating of 70 percent (Tr. 124-37). Because the Appeals Council admitted additional evidence into the record, there is also presented the issue of whether the court can determine if substantial evidence supports the ALJ's decision based on the record as supplemented. The court finds that this latter issue is determinative of this appeal and therefore will not address, as moot, the other issues raised.

## DISCUSSION

As noted, when the Appeals Council admits additional evidence into the record before denying a claimant's request for review, the court "must review the record as a whole, including

the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings." *Wilkins*, 953 F.2d at 96. At the same time, the court must not resolve conflicts in the evidence. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). To properly balance its obligations to review the entire record and to refrain from fact finding, the court "should conduct a limited analysis of the additional evidence to assess whether the new evidence is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports." *Felts*, 2012 WL 1836280, at *1 (quoting *McGinnis v. Astrue*, 709 F. Supp. 2d 468, 470 (W.D. Va. 2010) (internal quotation marks omitted); *see also Davis*, 392 F. Supp. 2d at 751. In the event the additional evidence meets any of these criteria, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. *Felts*, 2012 WL 1836280, at *1.

The additional evidence admitted by the Appeals Council included the 22-page report of physician Boyan A. Georgiev, M.D. (Tr. 834-55) on his examination of plaintiff on 14 August 2012 for the VA and associated review of plaintiff's medical and other records.[6] Dr. Georgiev's report was among the evidence underlying the VA disability decision that was before the ALJ. *See* Tr. 133 ("VA Examination (Cervical Spine), QTC, conducted on August 14, 2012" and "VA Examination (Thoracolumbar Spine), QTC, conducted on August 14, 2012"). The ALJ gave this decision "little weight" on the grounds that it was not based on Social Security law and was made by an agency other than the Social Security Administration, citing 20 C.F.R. § 404.1504, and was not supported by the longitudinal medical record. *See* Tr. 31 ¶ 5.

Dr. Georgiev's report consists primarily of a Disability Benefits Questionnaire ("DBQ") containing detailed findings and medical opinions regarding plaintiff's cervical spine

---

[6] The report indicates that Dr. Georgiev reviewed not only plaintiff's VA claims file and military records, but also his civilian medical records. Tr. 850 ¶ 3; 853 ¶ 3.

impairments (Tr. 834-41) and a DBQ containing detailed findings and medical opinions regarding plaintiff's lumbar spine[7] impairments (Tr. 842-49).  The report also includes Dr. Georgiev's medical opinion regarding the connection of plaintiff's lumbar impairment to his military service (Tr. 850-52 (finding that such impairment existed prior to military service but was "aggravated beyond its natural progression by an in-service injury, event, or illness")); and his opinion regarding the connection of plaintiff's cervical impairment to his military service (Tr. 853-55 (finding that such impairment "was at least as likely as not (50 percent or greater probability) incurred in or caused by the claimed in-service injury, event, or illness")).

With respect to the cervical spine, Dr. Georgiev diagnosed plaintiff with cervical spine post laminectomy syndrome and cervical spine intervertebral disc syndrome ("IVDS") involving the bilateral subscapular nerves.  Tr. 834.  As part of his examination of plaintiff, Dr. Georgiev measured the extent to which plaintiff's pain impacted his cervical range of motion.  The report explains that the range of motion measurements were made using a goniometer (Tr. 834), which is a "calibrated device designed to measure the arc or range of motion of a joint." *Stedman's Medical Dictionary*, entry for "goniometer," Westlaw at STEDMANS 380800 (last updated Nov. 2014).  Dr. Gorgiev measured plaintiff's cervical range of motion with respect to forward flexion, extension, right lateral flexion, left lateral flexion, right lateral rotation, and left lateral rotation.  Tr. 834-35.  The measurements made for each of these variables included both the maximum range of motion that plaintiff could achieve as well as "the point at which painful motion begins, [as] evidenced by visible behavior such as facial expression, wincing, etc."  Tr. 834. Dr. Georgiev assessed plaintiff as having less than normal range of motion on each of the

---

[7] Although the DBQ speaks at points of the thoracolumbar spine, the information in the DBQ makes clear that the spine subject to the impairments discussed is the lumbar spine.

six measures,[8] as well as objective evidence of painful motion on extension, left lateral flexion, and left lateral rotation. Tr. 834-35. As a result, Dr. Georgiev determined that plaintiff's cervical impairments resulted in a functional loss or impairment in the form of less movement than normal and pain on movement. Tr. 836. Dr. Georgiev further found that while plaintiff had normal muscle strength, gait, and posture, he also had hypoactive reflexes and decreased sensation to light touch in the forearms, hands, and fingers. Tr. 837-38. In addition, he found plaintiff to have radiculopathy causing mild intermittent pain, mild paresthesias and/or dysesthesias, and mild numbness in both upper extremities. Tr. 838. He found that in the past 12 months, plaintiff's cervical IVDS had resulted in an incapacitating episode—"a period of acute symptoms severe enough to require prescribed bed rest and treatment by a physician"—of a 1- to 2-week duration. Tr. 839. Based on his examination, Dr. Georgiev concluded that plaintiff's cervical spine impairments had a mild to moderate impact on his ability to work. Tr. 840.

Dr. Georgiev conducted a similar examination of plaintiff's lumbar spine condition. He diagnosed plaintiff with lumbar spine degenerative disc disease, lumbar spine post laminectomy syndrome, and lumbar spine IVDS involving the left sciatic nerve. Tr. 842. Evaluating plaintiff's lumbar range of motion in the same manner as he had done for plaintiff's cervical range of motion, Dr. Georgiev again found plaintiff to have less than normal range of motion on each of the six measures[9] and demonstrating objective evidence of painful motion on forward

---

[8] Specifically, Dr. Georgiev found plaintiff to have: 35 degrees of forward flexion (normal is 45 degrees); 30 degrees of extension (normal is 45 degrees); 30 degrees of right lateral flexion (normal is 45 degrees); 30 degrees of left lateral flexion (normal is 45 degrees); 65 degrees of right lateral rotation (normal is 80 degrees), and 60 degrees of left lateral rotation (normal is 80 degrees). Tr. 834-35.

[9] Specifically, Dr. Georgiev found plaintiff to have: 60 degrees of forward flexion (normal is 90 degrees); 10 degrees of extension (normal is 30 degrees); 20 degrees of right lateral flexion (normal is 30 degrees); 15 degrees of left lateral flexion (normal is 30 degrees); 25 degrees of right lateral rotation (normal is 30 degrees); and 20 degrees of left lateral rotation (normal is 30 degrees). Tr. 842-43.

flexion, extension, left lateral extension, and left lateral rotation. Tr. 842-43. Dr. Georgiev found plaintiff to have a resulting functional loss or impairment in the form of less movement than normal, pain on movement, and interference with sitting, standing and/or weight-bearing. Tr. 844. Dr. Georgiev also found plaintiff to exhibit guarding of the lumbar spine but without abnormal gait or spinal contour. Tr. 844-45. He further found plaintiff to have normal muscle strength but hypoactive reflexes of the left knee and ankle, decreased sensation to light touch in the left lower leg, ankle, and foot, and a positive straight leg raising test on the left side. Tr. 846. He found plaintiff to have radiculopathy causing mild constant pain, moderate intermittent pain, mild paresthesias and/or dysesthesias, and mild numbness in the left lower extremity. Tr. 846. He found that in the past 12 months, plaintiff's lumbar IVDS had resulted in an incapacitating episode of a 4- to 6-week duration. Tr. 847. Based on his examination, Dr. Georgiev concluded that plaintiff's lumbar spine impairments had a moderate to severe impact on his ability to work. Tr. 848.

When considering Dr. Georgiev's report as part of the record, the court cannot say that substantial evidence supports the ALJ's decision. One reason is that it provides detailed findings and related opinions regarding the functional limitations caused by plaintiff's impairments. The ALJ repeatedly noted in his decision the absence of any such specification by plaintiff's treating providers of limitations on him. For example, the ALJ gave little weight to the February 2011 pre-surgery opinion from plaintiff's treating neurosurgeon, Thomas E. Melin, M.D., that plaintiff was "unable to pursue gainful employment at this time" (Tr. 356), in part, on the grounds that Dr. Melin's opinion did not specify any restrictions or limitations. Tr. 30 ¶ 5. Similarly, the ALJ rejected the May 2011 pre-surgery opinion of physician's assistant Erica Christensen, PA-C, MPAS ("PA Christensen") (*see* Tr. 491) that he could not return to work until the surgery was

completed, in part, on the grounds that she "did not specify any specific limitations." Tr. 30 ¶ 5. PA Christensen was the provider who saw plaintiff most frequently prior to his surgeries, between 14 September 2010 and 11 October 2011. *See* Tr. 451-52, 456-57, 481-98. The ALJ discounted the opinion of physician's assistant Lara Ivey, PA-C ("PA Ivey") reflected in her 30 April 2013 (Tr. 777-79) and 26 August 2013 (Tr. 768-70) post-surgery treatment notes that plaintiff was disabled, in part, because she "also failed to indicate specific restrictions or limitations." Tr. 30 ¶ 5. PA Ivey was the provider who saw plaintiff most frequently after his surgeries, from 7 December 2011 to 26 August 2013. *See* Tr. 690-93, 695-96, 700-01, 705-07, 735-47, 768-82, 785-90. Thus, Dr. Georgiev's report tends to fill a gap in the medical evidence specifically identified by the ALJ.

The court recognizes that Dr. Georgiev is not a treating provider and that his report therefore does not address precisely the gap the ALJ identified. Nonetheless, his report does provide detailed findings and related opinions regarding plaintiff's functionality that have potential probative force irrespective of Dr. Georgiev's status as a nontreating source. As to the opinions expressed in Dr. Georgiev's report, several factors lend weight to them. As a physician, he is an acceptable medical source; his findings are based on an examination of plaintiff; and the opinions he expresses are supported by detailed findings. *See*, *e.g.*, 20 C.F.R. §§ 404.1527(c)(1), (3) (listing factors bearing on weight due medical opinions); 404.1513(a)(1) (identifying licensed physicians as acceptable medical sources); *see generally Way v. Colvin*, No. 5:14–CV–411–D, 2015 WL 4545721, at *6-7 (E.D.N.C. 1 July 2015) (discussing assessment of medical source opinions generally), *mem. & recomm. adopted by* 2015 WL 4560693, at *1 (28 July 2015).[10]

---

[10] The gap in evidence recognized by the ALJ is not filled by the report (Tr. 752-54) and medical source statement on physical RFC (Tr. 755-62) by consulting physician Feras Tanta, M.D. based on his 19 July 2013 examination of

12

The evidence of plaintiff's limitations in Dr. Georgiev's report is, of course, directly relevant to the limitations the ALJ found plaintiff to have in his RFC determination. For example, Dr. Georgiev's opinion, based on his detailed findings, that plaintiff's lumbar spine condition interfered with his ability to sit and stand (*see* Tr. 844) could plausibly justify more limitations than simply the restriction to sedentary work provided in the ALJ's RFC determination.

Dr. Georgiev, of course, also found that plaintiff had postural, manipulative, and other nonexertional limitations. Dr. Georgiev's report provides evidence supportive of limitations in several postural activities, such as stooping and crouching, given the restrictions on his range of motion, including restrictions attributable to pain.[11] Notably, the ALJ rejected determinations by nonexamining state agency consulting physicians that plaintiff was limited to performing stooping and crouching only occasionally. *See* Tr. 30 ¶ 5 (referencing Tr. 99, 107, 118). One reason he gave was that he "[did] not find that the evidence supports such postural limitations." Tr. 30 ¶ 5. Dr. Georgiev's report could plausibly be interpreted as providing some such evidence.

---

plaintiff. Had the ALJ deemed Dr. Tanta's submissions to adequately address the gap, the ALJ would presumably have stated so. Moreover, Dr. Tanta, unlike Dr. Georgiev, did not have plaintiff's medical records available to him, which tends to reduce the probative weight of his opinions. *See* Tr. 754 ("Obtaining his records might be helpful to complete findings . . . ."); 20 C.F.R. § 404.1527(c)(6) (citing as a factor in assessing the weight due a medical opinion "the extent to which an acceptable medical source is familiar with the other information in [the claimant's] case record"). In addition, Dr. Tanta's report provides less detailed and arguably less precise information in certain areas than Dr. Georgiev's, such as range of motion of the spine (*e.g.*, Dr. Georgiev used a goniometer, but there is no indication that Dr. Tanta did). On remand, consideration of the submissions of Dr. Tanta and Dr. Georgiev's together could conceivably, in certain areas, provide corroborative force to each other. The ALJ gave Dr. Tanta's medical source statement partial weight. *See* Tr. 31 ¶ 5. By admitting Dr. Georgiev's report into the record, the Appeals Council determined implicitly, pursuant to 20 C.F.R. § 404.970(b), that it was new (*i.e.*, not duplicative or cumulative), material (*i.e.*, presented a reasonable possibility that the new evidence would have changed the outcome), and related to the alleged period of disability. *See Wilkins*, 953 F.2d at 95–96.

[11] For the definition of stooping, crouching, and other physical activities, see *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, app. C (U.S. Dep't of Labor 1993), https://www.nosscr.org/sco/sco-ocr.pdf.

The court recognizes that, under Social Security Ruling 96-9p, "postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, *crouching*, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work." Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *7 (emphasis added). This ruling also provides that, while most unskilled sedentary occupations require an ability to stoop occasionally, "restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." *Id.* at *8. The ALJ mentioned both these provisions of Social Security Ruling 96-9p in rejecting the opinion of the nonexamining state agency consulting physicians regarding plaintiff's ability to crouch and stoop. Tr. 30 ¶ 5.

However, Dr. Georgiev's report raises the issue of not only whether plaintiff has certain postural (and other) limitations, such as crouching and stooping, but also the degree of any such limitations. Social Security Ruling 96-9p itself provides that the complete inability to stoop would significantly erode the unskilled sedentary occupational base and usually be disabling, and clearly suggests that some ability to stoop limited to less than occasionally could materially erode the unskilled sedentary occupational base. Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *8. In addition, as the foregoing quoted provision from Social Security Ruling 96-9p indicates, a limitation to occasional stooping should minimally erode the unskilled occupation base of sedentary work "by itself." *Id.* Dr. Georgiev's report raises the possibility of additional limitations beyond that relating to stooping.

The court is aware that at the first hearing the ALJ elicited testimony from a vocational expert to the effect that limitation of plaintiff to no climbing of ladders, ropes, or scaffolds and only occasional performance of the other postural activities, along with a sit-stand option, would

14

not preclude him from performing sedentary work. *See* Tr. 66-68. It would, however, be speculation to assume that consideration of Dr. Georgiev's report would result in the same or lesser limitations in plaintiff's RFC.

Dr. Georgiev's report also provides support for possible manipulative limitations on plaintiff's part. Specifically, Dr. Georgiev found that the intermittent pain, paresthesias and/or dysesthesias, and numbness in both of plaintiff's upper extremities involved nerve roots associated with the hand and fingers. *See* Tr. 838 ¶ 10, 11.c. Social Security Ruling 96-9p provides that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. . . . Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *8. The ALJ noted that plaintiff reported some upper extremity pain, but few complaints of upper extremity numbness to his treating providers. Tr. 26 ¶ 5. He, of course, ultimately eschewed any manipulative limitations. Dr. Georgiev's findings would tend to substantiate plaintiff's reports.

In addition, the limitations delineated in Dr. Georgiev's report relate to plaintiff's ability to perform work on a regular and continuing basis—that is, eight hours a day and five days a week or on an equivalent work schedule. *See* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *2; *see also Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006) ("[RFC is] an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.") (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *2 (2 Jul. 1996)). The limitations set out by Dr. Georgiev, particularly those relating to pain, could plausibly be interpreted as undermining plaintiff's ability to work on a regular and

continuing basis.  Moreover, Dr. Georgiev's finding that plaintiff had incapacitating episodes over the past 12 months due to IVDS of both the cervical and lumbar spines (*see* Tr. 839 ¶ 13; 847 ¶ 14) is consistent with and therefore tends to substantiate plaintiff's hearing testimony that he has to spend 3 to 4 days a month in bed because of his impairments (*see* Tr. 86; 25 ¶ 5 (ALJ's recitation of this testimony)).

In addition, as the foregoing discussion suggests, Dr. Georgiev's report has a potential bearing on the ALJ's determination of plaintiff's credibility.  The ALJ found that although plaintiff's impairments could reasonably be expected to cause the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  Tr. 26 ¶ 5.  Dr. Georgiev's report tends to substantiate limiting effects plaintiff alleges and thereby could plausibly result in a different assessment of plaintiff's credibility.

Significantly, the ALJ determined that, given his RFC determination, this case could properly be resolved by application of the Medical-Vocational Guidelines without use of a vocational expert.  Consideration of Dr. Georgiev's report raises the possibility that plaintiff could be found subject to limitations that would preclude application of the Medical-Vocational Guidelines, dictate that they be used only as a framework, and require the ALJ to obtain the assistance of a vocational expert at step five of the sequential analysis to determine whether there are jobs in significant numbers in the national economy that plaintiff could perform.  *See*, *e.g.*, Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *8 (indicating possible utility of vocational resources, which include testimony of a vocational expert, where claimant is limited to less than occasional stooping or to a manipulative limitation that does not alone render the claimant disabled).  As discussed, at the first hearing, the ALJ did elicit testimony from a vocational

expert based on certain hypothetical limitations. Tr. 66-68. But the ALJ who ultimately decided this case did not rely on that testimony. And, again, the limitations included in RFC determination made after consideration of Dr. Georgiev's report could plausibly be materially different than those forming the basis of the vocational expert's testimony at the first hearing.

Because the inclusion in the record of Dr. Georgiev's opinion precludes the court from determining whether substantial evidence supports the ALJ's decision, this case should be remanded for further fact finding. It is up to the Commissioner, not this court, to determine the extent to which, if any, Dr. Georgiev's findings and related opinions demonstrate greater and/or different limitations in plaintiff's RFC than determined by the ALJ. Depending on the interpretation given Dr. Georgiev's report, it is reasonably possible that the outcome of the case could be different. *See*, *e.g.*, *Sederbaum v. Colvin*, Civ. Act. No. 1:14-cv-1777-TMC, 2015 WL 3545578, at *17 (D.S.C.) (recommending remand on finding that a different outcome was reasonably possible), *rep. & recomm. adopted by* 2015 WL 3545578, at *1 (8 June 2015); *Owens v. Astrue*, No. 5:11-CV-331-D, 2012 WL 3704955, at *5 (E.D.N.C. 25 June 2012) (same), *rep. & recomm. adopted by* 2012 WL 3704685, at *1 (27 Aug. 2012). This is particularly so given that "'[s]edentary work' represents a significantly restricted range of work, and individuals with a maximum sustained work capacity [*i.e.*, RFC] limited to sedentary work have very serious functional limitations." Medical-Vocational Guidelines Rule 201(h)(4); *see also* Soc. Sec. Ruling 96-9p, 1996 WL 374185, at *3 (same). On remand, the Commissioner needs to consider not only Dr. Georgiev's report, but also the other additional evidence plaintiff submitted to the Appeals Council (Tr. 4, 804-1165) and, of course, the remaining evidence of record.

17
Case 7:15-cv-00136-D   Document 33   Filed 07/26/16   Page 17 of 19

## **CONCLUSION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 23) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 26) for judgment on the pleadings be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation. In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence or the outcome of this case, matters that are for the Commissioner to resolve.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 9 August 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 26th day of July 2016.

James E. Gates
United States Magistrate Judge